UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON CLARK,<br><br>     Petitioner,<br><br>     vs.<br><br>GEORGE DUNCAN,<br><br>     Respondent. | No. 9:01-cv-00456-JKS<br><br>MEMORANDUM DECISION |

  Petitioner Jason Clark has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is currently serving two concurrent sentences of 25 years to life, concurrently with two sentences of 7.5 to 15 years at the Great Meadow Correctional Facility, Comstock, New York. Petitioner was convicted in County Court, Albany County, New York after entering a guilty plea to seven counts of an eight-count indictment: Murder in the Second Degree (felony murder); Murder in the Second Degree (depraved indifference); two separate counts of Attempted Robbery in the First Degree; Burglary in the Third Degree; Grand Larceny in the Fourth Degree; and Criminal Possession of Stolen Property in the Fourth Degree.[1]  Respondent has filed an answer and Petitioner has filed his traverse.

  Petitioner, at the time a few months past his 16th birthday, left his home armed with a .45 caliber Glock pistol he had obtained in an earlier burglary. Later in the evening Petitioner, in the company of two friends, entered a convenience store with the intent to rob it. Petitioner had his gun drawn at the time he entered the store. After entering the store an occupant, identified as possibly the owner or another clerk, started pelting with Petitioner with cans. During the ensuing melee Petitioner fired his gun twice killing the store clerk.

  Petitioner appealed his conviction to the Appellate Department of the New York Supreme Court on the grounds that (1) the sentence he received was unduly harsh and should be reduced in the interests of justice and (2) illegal search and seizure in violation of his Fourth

---

[1] As to the last three (Burglary, Grand Larceny, and Possession), Petitioner has completed the maximum term imposed for these offenses.

Amendment rights.  The Appellate Department affirmed, *People v. Clark*, 684 N.Y.S.2d 673 (N.Y. App. Div.1999).  The New York Court of Appeals denied leave to appeal without opinion on May 22, 1999, 715 N.E.2d 509 (N.Y.1999).  His conviction became final 90 days later, Friday, August 20, 1999, when his time for petitioning the U.S. Supreme Court for *certiorari* expired; and his time to file a federal habeas petition expired one year later, Monday, August 21, 2000, unless the time were tolled.  *Pratt v. Greiner*, 306 F.3d 1190, 1195 (2d Cir.2002).

The time for filing a federal habeas petition is tolled during the time that state post-conviction proceedings are pending. 28 U.S.C. § 2244(d)(2).  On August 17, 2000, four days before his time to file a petition for federal habeas relief expired, Petitioner filed a motion for an order vacating judgment under N.Y. CRIM. PROC. LAW, § 440.10.[2]  In that motion Petitioner asserted that he had been denied the effective assistance of counsel, alleging two bases: (1) the failure to investigate the circumstances surrounding his consent to the search of the apartment in which he was residing with his father; and (2) that counsel misrepresented the sentence that Petitioner would receive if he were to plead guilty.  The Albany County Court denied Petitioner's motion without a hearing in a written decision on December 6, 2000, and the Appellate Department of the New York Supreme Court denied leave to appeal March 6, 2001. According to Petitioner's uncontradicted testimony during the time his petition for leave to appeal the decision was pending before the Appellate Department he was moved from the Great Meadow Correctional Facility to the Green Haven Correctional Facility, then back to Great Meadow.  The notice that his petition for leave to appeal was denied was mailed to Green Haven and not received by Petitioner at Great Meadow until March 19.  On March 22, 2001, Petitioner mailed the petition at bar, which was received by the Clerk of the Court March 26 and filed March 29, 2001.

---

[2] The cover letter accompanying the motion bears a date of August 17 and the motion bears a stamped file date of August 18, 2000.  Under the federal prison mail box rule, a *pro se* prisoner's habeas petition is deemed filed when he gives it to prison officials.  *Walker v. Jastremski*, 430 F.3d 560, 562 n. 1 (2d Cir.2005).  Notwithstanding New York's apparent rejection of the mailbox rule, the Second Circuit applies the federal mail box rule in determining whether the statute of limitations for filing a federal habeas petition is tolled.  *Fernandez v. Artuz*, 402 F.3d 111, 114–15 (2d Cir.), *cert. denied*, 546 U.S. ___, 126 S.Ct. 79 (2005) (memo).  In the absence of evidence that a later date applies, the Court assumes it was handed to prison officials on the date it bears.

Thus, if tolling stopped on March 6, 2001, when the Appellate Department denied leave to appeal, the petition is untimely. On the other hand, if the time was tolled until the date Petitioner received the notice of denial, the petition is timely. Consequently, the question of timeliness depends on whether the period March 6 through 19 was equitably tolled. To obtain equitable tolling, Petitioner must show that "extraordinary circumstances beyond his control prevented successful filing." *Smaldone v. Senkowski,* 273 F.3d 133, 138 (2d Cir.2001) (internal quotation marks and citation omitted). However, the Court need not decide that issue.[3/] The limitations period of 28 U.S.C. § 2244(d)(1) is not jurisdictional and must be pleaded as an affirmative defense. *Acosta v. Artuz*, 221 F.3d 117, 121–22 (2d Cir.2000). Although Respondent pleaded the statute of limitations as an affirmative defense, he does not raise or argue the issue in his Memorandum of Law accompanying the answer. Consequently, the Court may treat the defense as having been abandoned. *See McCardle v. Haddad*, 131 F.3d 43, 50-51 (2d Cir.1997) (holding that an affirmative defense is waived by failure to raise it in a timely and proper manner before the district court); *cf.* L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.").[4/]

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Consequently, this Court cannot grant relief unless the decision of the Albany County Court was "contrary to, or involved an unreasonable application of, clearly established

---

[3/] The Court notes that although the Second Circuit has not weighed in on the issue, its sister districts in this state have unanimously stated in broad terms that routine administrative matters associated with the New York penal system, including routine transfers between facilities, are not sufficiently extraordinary to trigger equitable tolling. *See, e.g., Carrigan v. Berbery*, 371 F.Supp.2d 325, 330 (W.D.N.Y.2005); *Lindo v. Lefever*, 193 F.Supp.2d 659, 663 (E.D.N.Y.2002). The Second Circuit avoided the issue in *Hizbullankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir.2001), but included language that indicates that, under the facts of this case, it may be inclined to rule in Petitioner's favor.

[4/] That there was a close issue on the question of the timeliness of the petition was noted in some detail in the Decision and Order directing a response by Respondent. Thus, Respondent was clearly on notice that this issue existed and was of concern to the Court yet deliberately chose not to address it.

Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In applying this standard, this Court reviews the last reasoned decision by the state court, *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000), which in this case was that of the New York County Court, Albany County on his N.Y. CRIM. PROC. LAW § 440.10 motion.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In his petition, Petitioner raises the same two ineffective assistance of counsel allegations he raised before the Albany County Court: (1) the failure to investigate the circumstances surrounding his consent to the search of the apartment in which he was residing with his father; and (2) that counsel misrepresented the sentence that Petitioner would receive if he were to plead guilty.

To demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*.  Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

The Albany County Court noted that the guilty plea was part of a plea bargain and the "public interest is served by holding defendants to the bargains they have made."  In denying his motion the Albany County Court observed that generally under New York law a defendant waives his right to a claim of ineffective counsel by entering a plea of guilty and that "it is not for the court to 'second guess' the trial strategy chosen by defense counsel so long as the defendant was afforded meaningful representation."  Without an evidentiary hearing or addressing the merits of Petitioner's claims, the Albany County Court held:

In the case at bar, the defendant entered into and received the benefit of a knowing, intelligent, and voluntary plea agreement. Accordingly, the bargain the defendant made should be honored. Furthermore, given the greater penalty to which defendant was exposed – 37 1/2 years to life imprisonment – the plea bargain negotiated by counsel was favorable to the defendant, and significantly reduced his potential prison term. The Court concludes that defendant received meaningful assistance of counsel and the constitutional requirements have been met.

Respondent does not argue before this Court that Petitioner was denied relief in the state court on adequate independent state law grounds, choosing instead to address the case on the merits. The Court notes that, contrary to observation of the Albany County Court in ruling on Petitioner's CPL § 440.10 motion, the fact that Petitioner pleaded guilty does not constitute a waiver of his ineffective counsel claim under New York law under the facts of this case. It falls squarely within an exception to that rule recognized but found inapplicable in the case cited by the Albany County Court, *People v. Bethany*, 582 N.Y.S.2d 877 (N.Y.A.D.1992), where counsel's alleged ineffectiveness infected the plea bargaining process, *i.e.*, that defendant entered a plea because of his attorney's poor performance. Moreover, it is questionable whether a Sixth Amendment claim of ineffective counsel that infects the guilty plea itself is waived by the entry of the guilty plea. *See Oyague v. Artuz*, 393 F.3d 99, 104–105 (2d Cir.2004) (holding that waiver of federal constitutional claims is determined under federal, not state, standards addressed on the merits the ineffective assistance of counsel claim in relation to the plea bargaining process); *see also United States v. Oladimeji*, 463 F.3d 152, 155 (2d Cir. 2006) (holding that while a waiver of the right to appeal precludes raising an ineffective assistance of counsel issue on direct appeal, it may nonetheless be raised in a habeas petition to set aside the plea).

This Court is also troubled by the characterization of the plea as being the product of a plea bargain or agreement. The transcript of the plea colloquy clearly shows that it was not the result of a plea bargain (emphasis added).

> THE COURT: All right. Before I turn it over to Ms. Coleman [prosecutor] for her comments before I commence this plea colloquy, I just want to make a statement for the record. This is an eight count indictment. I concur with Mr. Ackerman [defense counsel] that his client has an absolute right to enter a plea of guilty to the entire indictment so long as there are no promises being made. *So "a plea bargain" is not being entered into at this time*.

> I will note for the record that the first three counts of this indictment all are different theories of murder. All are murder counts in the second degree. It is my belief that if this matter were to have gone to a jury trial, that the defendant could conceivably have been convicted of the first count of this indictment, felony murder, but second count of this indictment is intentional murder, and the third count of this indictment is depraved indifference murder. It is my belief that I would not have been able to allow the ladies and gentlemen of the jury to come back and return a verdict of guilty to both the intentional and depraved indifference murder.
>
> Thereby, it would seem to me that your client's ability to enter a plea of guilty to this entire indictment would mean that he would enter a plea of guilty to the first count, the third count, depraved indifference murder and all of the remaining counts and in a sense, it would be the duplicate equivalent of entering a plea of guilty to counts [*sic*] one, count three, count four through eight, but enter a plea of guilty to count two – counts two and three being mutually exclusive, but I ask you, Ms. Coleman, at this point in time if you wish to make any statement whatsoever about what I have just said with regard and prior to my actually engaging in the plea allocution with Mr. Clark?
>
> MS. COLEMAN: No, Your Honor. Your Honor and Mr. Ackerman have both accurately stated what's taken place here. I just wanted to make very clear for the record and for all concerned that Mr. Clark is pleading guilty to the indictment because it is his right to do so because the People cannot stop him from doing so and because *the People have refused at all stages in this proceeding to engage in plea bargaining*.

The transcript shows that not only was the plea not the result of any bargain but, in addition, the outcome of the plea was identical to the maximum outcome that could have resulted had the case gone to a jury trial. That is, Petitioner could not have been convicted of any additional counts than those to which he entered a guilty plea. The transcript of the plea colloquy also makes clear that Petitioner received no promises or assurances of the sentence that would be imposed at sentencing.

> THE COURT: Now, Mr. Ackerman indicates to me that you are prepared, in essence, to enter a plea of guilty to the entire indictment against you with the understanding that there are no promises being made here with regard to what the sentence will be other than it will be within the statutory framework of my obligations with regard to the law and what you're pleading guilty to. Do you understand that?
>
> THE DEFENDANT: Not entirely.

>THE COURT: Well, what portion of it do you not understand? You're entering a plea to this entire indictment with no promises being made to you. Do you understand that?
>
>THE DEFENDANT: Yes, Your Honor.

There being no reasoned decision of the state court addressing on the merits the two grounds raised by Petitioner and no independent state grounds existing for not addressing those grounds, this court must decide the issues *de novo* on the record before it, *see Spears v. Greiner*, 459 F.3d 200, 203-04 (2d Cir.2006), applying the *Strickland* standards. The Court starts with the proposition that it is well settled that a defendant's Sixth Amendment right to effective assistance of counsel extends to plea negotiations. *Davis v. Greiner*, 428 F.3d 81, 87 (2d Cir.2005). The Court discerns no principled reason not to apply this rule to situations, such as that at bar, involving a non-negotiated guilty plea. The right to effective counsel extends to "all critical stages in the proceedings," *United States v. Gordon*, 156 F.3d 376, 379 (2d Cir. 1998) (per curiam), and "[t]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in any criminal case," *Boria v. Keane*, 99 F.3d 492, 496–97 (2d Cir.1996).

As the U.S. Supreme Court noted more than 35 years ago in *McMann v. Richardson*, 397 U.S. 759, 769–70 (1970):

>[T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

Turning to the second ground, misrepresentation of the sentence he would have received, Petitioner states in his traverse "[c]ounsel informed defendant that he would, in all likelihood,

receive a sentence of no more than 20 years to life, and possibly a lesser sentence of 15 years to life." In an affidavit filed in the state court § 440.10 proceeding, Petitioner's mother stated: "according to Mr. Ackerman by entering a plea of guilty my son who be guaranteed a reduced sentence not to exceed 20 years." In a letter addressed to Petitioner dated June 29, 2000, attached as an exhibit in the state court § 440.10 proceeding, Ackerman stated in part:

> I will tell you without reservation that I did not expect you to receive the maximum sentence of 25 years to life, especially when you cooperated with the District Attorney's Office relative to the subsequent trial.
>
> I will tell you again without reservation that I thought that your sentence would be somewhere between 20 to 25 years and I was surprised and somewhat taken aback when that did not happen.
>
> \* \* \* \*
>
> I would never ever mislead you. Again, in being a Monday morning quarterback, if I had only known or thought that you would receive 25 years to life, I may well have recommended that we gamble and take our best shot event though the evidence was so overwhelming.
>
> If there is any way that I can help you, I will do; yet I want you to remember that most unfortunately that there was nothing done from a legal standpoint that was wrong or in error; but rather, it was a good faith misreading of the prosecutor and the court by me in your case. I say that only because I thought your sentence would be possibly 22 or 23 years to life and not 25 to life.

At the Plea colloquy, the following exchange occurred between the court and Petitioner.

> THE COURT: Now , do you understand that by law, I will do a – between now and sentencing, I will do formal research on this now, but it does appear that pursuant to your plea of guilty to, for instance, the felony murder, you could receive up to 25 years to life with credit for the time you've served so far and minimally, you would have to receive a sentence of 15 to life by statute. Do you understand those are the perimeters, for instance, of the murder counts that we're dealing with?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And you understand that this court is making no promises at this time other than I will allow you to present all information to me as I will allow the People to present all information to before I make a decision where within that range I will sentence you to. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

On this record, Petitioner's conclusory allegation that he pleaded guilty as a result of his attorney's incorrect prediction of sentence is subject to summary dismissal because it is unsupported and wholly incredible in light of the record. *See Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977) ("[T]he representations of [a] defendant at [a plea] hearing · · · constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."). Although there are minor differences between how Petitioner and his mother viewed the advice given and the recollection of counsel as expressed in his June 2000 letter, the plea colloquy clearly and unequivocally shows that Petitioner understood that there were no promises made as to the sentence that would be imposed and that he could, depending on information submitted to the sentencing court, receive a sentence of between 15 years to life and 25 years to life.[5/] Nothing in the record shows that Petitioner believed at the time he entered his guilty plea that he would receive less than the maximum sentence. Neither Petitioner nor his mother informed the court that there was, or may have been, a misunderstanding and no reason for this omission is provided. This severely undercuts, if not eviscerates, the *post hoc* assertions of either a misrepresentation by counsel of the facts concerning the sentence Petitioner would receive as alleged in the petition or guaranteed as alleged by Petitioner's mother. The Court also finds significant that Petitioner characterizes the advice given as being limited by the phrase "in all likelihood."

Even on the merits Petitioner loses. Every Court of Appeals that has decided the issue has held that mere erroneous predictions as to the sentence to be received does not rise to the level of a *Strickland* violation. *See, e.g., United States v. Barnes*, 83 F.3d 934, 940 (7th Cir.1996); *Knight v. States*, 37 F.3d 769, 775 (1st Cir.1994); *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir.1993); *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir.1986); Although it has not directly addressed the issue, in the context of withdrawal of guilty pleas, the Second Circuit has differentiated between "predictive" errors as present in this case and "factual" errors. The former are generally insufficient to warrant the withdrawal of pleas while the latter may be. *See United States v. Artega*, 411 F.3d 315, 321 (2d Cir.2005). If this were a case in which counsel

---

[5/] The Court notes that the transcript of the plea colloquy indicates that Petitioner's mother was not only present in the court room but permitted to be at Petitioner's side.

MEMORANDUM DECISION
*Clark v. Duncan*, No. 9:01-cv-00456-JKS            9

failed to investigate the facts relevant to the sentence or the prediction were a gross mischaracterization of the sentence to be imposed, it might stand on a different footing. *See, Bethel v. United States*, 458 F.3d 711, 717 (7th Cir.2006) and the authorities cited therein.

Petitioner is not entitled to relief under the second ground asserted.

The claim that counsel did not adequately investigate the facts concerning the consent to the search of Petitioner's father's apartment that resulted in finding the gun that had been used in the burglary during which the murder occurred stands on a different footing. Where defense counsel's failure to litigate a Fourth Amendment claim competently is the allegation of ineffectiveness, Petitioner must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the outcome would have been different absent the excludable evidence in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Laaman v. United States,* 973 F.2d 107, 113 (2d Cir.1992). In this case, Petitioner asserts that had counsel adequately investigated the facts and brought a motion to suppress, the gun seized from his father's apartment, which was the major evidentiary item in the People's case against him, would have been suppressed and he would not have entered a guilty plea.

Petitioner asserts that he was apprehended in his father's apartment, handcuffed, taken outside and placed in a squad car surrounded by police officers, and, separated from his father, was told to sign the consent search form without being advised that he had the right to refuse. Petitioner and his father both affirm under oath that immediately prior to the time Petitioner was presented the consent to search form and told to sign it, his father had refused to consent to a search of the apartment. Thus, according to Petitioner, his consent was not voluntarily given rendering the search illegal and the gun seized as a result thereof inadmissible.

Respondent argues that in entering his guilty plea, Petitioner waived his right to contest the admissibility of tangible evidence against him, including admissibility of the gun found as a result of the allegedly illegal search. At the plea colloquy the following exchange between the court and Petitioner occurred.

> THE COURT: Are you about to enter a plea of guilty to the counts you are about to enter a plea of guilty because, in fact, you are guilty of the crimes that you about to enter a plea of guilty to?

>	THE DEFENDANT:  Yes, Your Honor.
>
>	THE COURT:  Two other waivers or things that you are giving up that I need to discuss with you.  You would have had the right — and as a matter of fact, your attorney has previously filed motions.  Those motions would have given you the right to pretrial hearings to determine whether the statement that you gave would be admissible in trial against you and whether or not any tangible physical evidence such as the weapon involved in this shooting would have been admissible in Court.  As a matter of fact, your co-defendants are in the process right now of going through those pretrial hearings and I actually started them yesterday and will finish them, I believe, tomorrow.  By entering a plea of guilty here today, you're giving up your rights to have those pretrial hearings and motions, and you're withdrawing those motions that had previously been made.  Do you understand and do you understand that waiver?
>
>	THE DEFENDANT:   Yes, Your Honor.

Respondent's argument falls wide of the mark.  Petitioner does not argue that his guilty plea did not result in a waiver of his right to contest the admissibility of the evidence against him.  Nor does Petitioner argue that he did not know he was waiving that right.  Petitioner's position is simply that had his attorney made a proper investigation of the facts surrounding the seizure of the gun he would have ascertained that Petitioner had a viable argument to suppress the gun as the fruit of an illegal search and seizure.  Consequently, Petitioner claim is that he was denied the effective assistance of counsel in failing to adequately pursue his Fourth Amendment claim and advising to enter a guilty plea.  Petitioner's argument is that, because counsel was ineffective in advising him, his plea was not made knowingly, intelligently, and voluntarily.

The record indicates that Petitioner's counsel filed a Notice of Pretrial Motions Pursuant to N. Y. CRIM. PROC. LAW, ARTICLE 255, which included notice of, *inter alia*, suppressing the results of the search of Petitioner's father's apartment and statements made by the petitioner to the police.  The CPL Article 255 motion broadly described the legal basis for the motion, *e.g.*, "seized without a warrant or consent or any lawful authority," but does not recite the factual basis therefor, instead requesting an evidentiary hearing be set.  It was the evidentiary hearing, referred to under New York practice as a "Mapp hearing," that Petitioner waived by entering his guilty plea.

Other than the June 29, 2000, letter attached as an exhibit in the state court § 440.10 proceeding referred to above, which does not address the issue of suppression of the results of

the allegedly illegal search, the record is devoid of any statement of Petitioner's counsel regarding what he was told by Petitioner, what independent investigation, if any, counsel undertook, or his reasons for abandoning the efforts to suppress the evidence seized as part of the search.  Ordinarily, in such a situation, the Court would order the record expanded to include the affidavit of counsel addressing the points raised by Petitioner.[6]  However, in the case at bar, for the reason set forth below, the Court finds it unnecessary to either expand the record or hold an evidentiary hearing.  Accepting as true Petitioner's allegations and assuming that counsel did not adequately investigate the facts surrounding the allegedly illegal search, which establish the first prong of the *Strickland* standard, the record clearly shows that Petitioner can not meet the second *Strickland* prong—prejudice.

Petitioner signed, under oath, a consent form that provided in relevant part (hand written materials shown in block print):

> I, Jason Clark being duly sworn and having been informed of my constitutional right not to have a search made of my Apartment at 440 Elk St 2nd Flr without a search warrant and of my right to refuse to consent to such a search do give my consent and permission to, Det Kenneth Wilcox, and Members of the Albany Police Department, members of the Albany Police Department, to conduct a complete search.
>
> I further give my consent and permission to said officer(s) to seize and to take into his (their) possession any and all evidence found by him (them) incident to or resulting from such search.
>
> This written permission is being given by me to the above named officer(s) voluntarily and without threats or promises of any kind.

Notwithstanding this statement under oath, Petitioner contends that his consent was involuntary.

On a motion to suppress the People bear the burden of establishing that consent was voluntary under the totality of the circumstances. *See People v. Gonzalez*, 347 N.E.2d 575, 580 (N.Y.1976).  Here the uncontradicted testimony of Petitioner was that he, a minor, was arrested, removed outside the presence of his father, handcuffed, and surrounded by a number of police officers.  This is strongly indicative that Petitioner was submitting to authority, not giving his consent. *Id.*, 347 N.E.2d at 580–81.  The fact that Petitioner signed a printed form indicating he

---

[6] RULES – SECTION 2254 CASES 7; *see Chang v. United States*, 250 F.3d 79, 85 (2d Cir.2000).

was informed of his right to refuse to consent is of little significance and certainly not dispositive. *Id.* Under strikingly similar circumstances, the New York Court of Appeals found in *Gonzalez* that the consent was the product of police coercion and, therefore was not voluntary. *Id*., 347 N.E.2d at 582. In light of the holding in *Gonzalez*, the Court agrees with Petitioner and finds that Petitioner had a meritorious Fourth Amendment claim that the search was illegal and the evidence seized as a result thereof, the gun, more likely than not would have been excluded. Counsel's conduct, whether in investigating or, having investigated, failing to pursue the Fourth Amendment issue with respect to the gun, was deficient.

The Court's inquiry does not, however, end there. Petitioner argues that the gun "was the crux of the People's case against [him]" and "[h]ad the gun been suppressed there is a very real possibility that the outcome would have been different." Petitioner further asserts that "[t]he only reason [he] entered a plea of guilty was because counsel advised him that the police **literally** had the 'smoking gun' which, in counsel's opinion, would lead to a conviction." Unfortunately for Petitioner his basic premise is incorrect. What Petitioner overlooks is the fact that he gave the police a written statement under oath that effectively constituted a confession. The voluntariness of this confession is not at issue in this petition. In addition, the People had the statement of a co-defendant (Avery) identifying Petitioner as the shooter.

In the statement given to the police, Petitioner stated:

> I am 16 years old and I live at 440 Elk St. for 1 year.

Last night I was with my friend Vauhn [*sic*] Avery at my house. When we left my house I brought my gun with me because there is this guy that's trying to shoot me.

Q: What caliber is your gun?

A: 45.

We were walking around and we decided to go to in this store on Ontario St. and get what we could get. Before we got there we ran into Antonio a friend of mine and told him we were going to rob the store. He said he would wait outside. We went in and I told the guy to give me the money.

Q: Where was the gun?

A: In my hand.

> Then this guy in the back of the store started throwing cans at me. I got hit with a couple of cans and the gun went off. I think it went off twice. I didn't know if I hit him or not. We ran out of the store and down First St. We split up and I went back to my house. I hid the gun under the couch. Later on me, Vauhn and Antonio met up back at his house. We hung out for a awhile and then I went home. Vauhn came back to the house later.
>
> This morning the police came to the house. I hid the gun in the ceiling when I heard them. The police arrested me and I gave Detective Wilcox permission to go get the gun. I was taken to the police station where I spoke with Detective's [*sic*] O'Hanlon and Wilcox and gave them this statement.
>
> I swear that I can read and write, I have read this one page statement that I have give to Detective's [*sic*] O'Hanlon and Wilcox without threat or promise and it is the truth.

The evidence against Petitioner, even without the gun itself, was, as observed by his defense counsel, Ackerman, in his June 29, 2000, letter, overwhelming. While the Court agrees there is a *possibility* the result might have been different, the record does not establish a *reasonable probability* that it would have been different. While one might agree with Petitioner's *post hoc* assertion that he would not have entered a guilty plea, there is very little, if any, likelihood, let alone a reasonable probability, that the ultimate outcome—Petitioner's guilt—would have changed. That is, even without the gun, it is more likely than not that after a jury trial Petitioner would have been convicted of the crimes to which he entered a guilty plea. Thus, whether counsel failed to investigate or having investigated failed to pursue Petitioner's Fourth Amendment claim, Petitioner was not prejudiced.

Petitioner is not entitled to relief on the first ground for relief.

Petitioner not being entitled to relief on any of the grounds raised in his petition,

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

The Clerk of the Court to enter final judgment accordingly.

Dated: March 13, 2007

s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge
